IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| VELMA JEAN HUMPHREY and ROBERT LOWE, individually and as personal representative of the ESTATE OF O'PATRICK HUMPHREY and on behalf of O'Patrick Humphrey's SURVIVORS and the BENEFICIARIES of O'Patrick Humphrey's ESTATE, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) |
| v. | ) Case No. 1:12-cv-366-WHA<br>)             (WO) |
| THE CITY OF HEADLAND, THE CITY OF HEADLAND POLICE DEPARTMENT, POLICE CHIEF MARK JONES, OFFICER TONY SMITH, and OFFICER TONY FRANKS, | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

**I.  INTRODUCTION**

This case is before the court on a Motion to Dismiss (Doc. # 7), filed on May 15, 2012 by Defendants City of Headland ("City"), City of Headland Police Department ("Police Department"), Police Chief Mark Jones ("Jones"), Officer Tony Smith ("Smith"), and Officer Tony Franks ("Franks").  The Plaintiffs, Velma Jean Humphrey and Robert Lowe (collectively, "Plaintiffs"), filed a Complaint (Doc. #1) on April 23, 2012, individually and on behalf of O'Patrick Humphrey's Estate.  The Complaint raises the following: Count I – a Fourth, Fifth, and Fourteenth Amendment excessive force claim pursuant to 42 U.S.C. § 1983 against Defendants Smith and Franks; Count II –a Fourth, Fifth, and Fourteenth Amendment excessive

force and cruel and unusual punishment claim pursuant to 42 U.S.C. § 1983 against City, Police Department, and Jones, both individually and in his official capacity; and Count III – a state law Wrongful Death claim as defined in Alabama Code § 6-5-410 pursuant to 42 U.S.C. § 1983 against City, Police Department and Jones, both individually and in his official capacity.

The Defendants now move for dismissal of the claims against them and raise various grounds in support of their contention. The Plaintiffs filed a Response to the Defendants' Motion to Dismiss (Doc. # 11) on June 5, 2012, and the Defendants filed a Reply to the Plaintiffs' Response on June 14, 2012. (Doc. # 15).

## II.  MOTION TO DISMISS

The court accepts the plaintiff's factual allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).  In analyzing the sufficiency of pleading, the court is guided by a two-prong approach: one, the court is not bound to accept conclusory statements of the elements of a cause of action and, two, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to entitlement to relief.  See *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009).   "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *Id*. (citation omitted).  To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but instead the complaint must contain

"only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  The factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555.

### III. <u>FACTS</u>[1]

The factual allegations from the Plaintiffs' Complaint are as follows:

On January 31, 2012, Velma Jean Humphrey called 911 and informed the operator that her son, O'Patrick Humphrey ("Humphrey"), needed treatment because he suffered from schizophrenia and was not under the influence of his medication.  Paramedics were sent to the scene and began treating Humphrey.  While the paramedics were trying to treat Humphrey, he became combative and ran from the paramedics.  Because of Humphrey's behavior, the local City of Headland Police were called to the scene.

The first officer to arrive was Officer Franks.  When he arrived on the scene, he discharged his firearm at Humphrey.  The shot grazed Humphrey.  Next, Officer Smith arrived on the scene.  Smith asked Franks if Humphrey was armed, and Franks failed to respond to Smith.

Humphrey had been absent from the scene since Franks shot at him.  However, after Smith arrived on the scene, Humphrey rounded the corner of a nearby residence and began

---

[1] The Defendants attached a document to their Brief (Doc. # 8-2) which they allege is a transcript of an interview with Velma Jean Humphrey taken shortly after the shooting of O'Patrick Humphrey.  Presumably, the Defendants intend for the court to use this document to supplement the facts found in the complaint.  In *SFM Holdings, Ltd. v. Banc of America Securities, LLC*, 600 F.3d 1334 (11th Cir. 2010), the court explained that "[i]n ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *Id.* at 1337.  This court finds that the transcript of the interview is not central to the Plaintiffs' claims, but is central, instead, to the Defendants' proposed defenses to liability.  Accordingly, the court will not consider the contents of the Defendants' proposed exhibit.

approaching Smith.  He walked towards Smith while waving his arms in the air.  While Humphrey was walking towards Smith, Smith fired his weapon which struck Humphrey in the groin.  This shot proved to be fatal.

## IV.  DISCUSSION

### A.  Abandonment

Although the Defendants filed a detailed brief in support of their Motion to Dismiss, the Plaintiffs have failed to respond to all but two of the Defendants' arguments.  In the Defendants' Reply Brief, the Defendants contend that the court should treat the claims which were not addressed by the Plaintiffs' in their Response Brief as abandoned.  For the reasons explained below, the court will do so.

Federal courts in this circuit, as well as in others, have found that a party's failure to respond to or to oppose arguments raised in a pending motion may result in an abandonment of those issues.  *See, e.g., Hooper v. City of Montgomery*, 482 F. Supp. 2d 1330, 1334 (M.D. Ala. 2007) (finding that the plaintiff's failure to respond to certain arguments raised in defendant's motion to dismiss resulted in the abandonment and subsequent dismissal of those claims); *Kirkland v. Cnty. Comm'n of Elmore Cnty., Ala.*, No. 2:08cv86-MEF, 2009 WL 596538 (M.D. Ala. March 6, 2009) (same); *Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n. 1 (5th Cir. 2006) (explaining that the plaintiff's failure "to pursue [a] claim beyond her complaint constituted abandonment.").  Similarly, "[i]t is not for the court to manufacture arguments on Plaintiff's behalf." *Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*, 124 F. Supp. 2d 1228, 1236 (M.D. Ala. 2000); *cf. Resolution Trust Corp. V. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995)

("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.").

Therefore, the court will only address the two issues that the Plaintiffs actually responded to in their brief: from Count I, the Fourth Amendment excessive force claim brought against Defendant Smith in his individual capacity pursuant to § 1983, and, from Count II, the Fourth Amendment excessive force claim brought against the City pursuant to § 1983. The remainder of Plaintiffs' claims are DISMISSED.

### B. Two Remaining Claims

#### 1. Excessive Force Claim Against Smith in Individual Capacity

Defendant Smith moves the court to dismiss the remaining excessive force claim against him under a theory of qualified immunity.

Because Smith has asserted qualified immunity in a Rule 12(b)(6) motion to dismiss, the court must determine if the Plaintiffs' complaint has sufficiently alleged a violation of a clearly established constitutional right. *Williams v. Alabama State University*, 102 F.3d 1179, 1182 (11th Cir. 1997). "Whether the . . . complaint alleges a violation of a clearly established right is a question of law." *Id.* (citing *Ansley v. Heinrich*, 925 F.2d 1339, 1348 (11th Cir. 1991)).

Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial. *Ansley v. Heinrich*, 925 F.2d 1339, 1345 (11th Cir. 1991). As a preliminary matter, the court must determine whether the public official was acting within the scope of his discretionary authority at the time the allegedly wrongful acts occurred. *See Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988). Once it is established that a defendant was acting

within his discretionary authority, the court must determine whether "[t]aken in a light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "[I]f a constitutional right would have been violated under the plaintiff's version of the facts," the court must then determine "whether the right was clearly established." *Wood v. Kesler* 323 F.3d 872, 878 (11th Cir. 2003).

Requiring that a constitutional right be clearly established means that liability only attaches if "[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *United States v. Lanier*, 520 U.S. 259, 270 (1997). In other words, a defendant is entitled to "fair warning" that his conduct deprived his victim of a constitutional right. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

In *Vinyard v. Wilson*, 311 F.3d 1340, 1350–53 (11th Cir. 2002), the Eleventh Circuit articulated three ways in which individual state defendants can receive "fair notice" that their conduct violates clearly established law. First, the words of a federal statute or constitutional provision may be specific enough "to establish clearly the law applicable to particular conduct and circumstances and to overcome qualified immunity, <u>even in the total absence of case law</u>." *Id*. at 1350 (emphasis in original). The Eleventh Circuit considers a case falling into this category an "obvious clarity case." *Id.* at 1350.

Second, if the conduct at issue is not so egregious as to violate the Constitution or a federal statue on its face, the court must turn its attention to case law that espouses "broad statements of principle . . . that are not tied to particularized facts." *Id.* at 1351. In these types of cases, courts will declare "X Conduct" unconstitutional regardless of the specific factual

6

situation. *Id.* "[P]ut differently, the precise facts surrounding 'X Conduct' are immaterial to the violation," thus these decisions can "clearly establish law applicable in the future to different sets of detailed facts." *Id.*

Third, courts must look to cases that tie a particular type of conduct to the specific facts of the case. *Id.* With these cases, courts must examine case law stating that "Y Conduct" is unconstitutional in "Z circumstances."[2] *Id.* If the circumstances facing the official are "materially similar" to those of the fact-specific case, this precedent can clearly establish the applicable law and qualified immunity will not be warranted. *Id.* at 1352.

In this circuit, the law can be "clearly established" for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or when relevant the highest court of the state where the case arose. *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003).

In the present case, the issue of whether Smith was acting within his discretionary authority is uncontested. Therefore, the court will limit its analysis as to qualified immunity in this opinion only to whether Smith's conduct, as alleged in the Complaint, violated a constitutional right and whether that right was clearly established. However, as will be explained below, because it is clear that Smith's actions did not violate any clearly established right of the decedent, he is due qualified immunity, and the court need not rule on whether Smith's conduct was violative of the Fourth Amendment. *See Pearson v. Callahan*, 555 U.S.

---

[2] The Eleventh Circuit noted that most case law will fall into this third category. *Vinyard*, 311 F.3d 1351–52.

223, 236 (2009) (holding that lower courts need not be bound by the rigid procedure originally set out in *Saucier v. Katz*, 533 U.S. 194 (2001)).

The Plaintiffs, in order to defeat Smith's qualified immunity argument, rely on the category of case law categorized above as "obvious clarity."  Essentially, the Plaintiffs argue, without citing any factually similar cases to support its position, that Smith's behavior as defined in the Complaint so clearly violates the law that it would have been obviously clear to any reasonable officer.  In other words, Smith's conduct was "so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir. 2002) (quoting *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000)). However, the Plaintiffs' position is untenable in the face of the extensive case law cited by the Defendant in this case.

The Supreme Court has explained that "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).  Furthermore, the Eleventh Circuit, citing *Garner*, has held that "the Constitution must also permit the use of deadly force against a suspect who poses not merely an escape risk (because he is not yet in police control), but also an imminent threat of danger to a police officer or others."  *McCormick v. City of Fort Lauderdale, Fla.*, 333 F.3d 1234, 1246 (11th Cir. 2003).  In order to provide the court with context as to the appropriate use of deadly force by police officers, Smith has provided the court with examples of police officers who have utilized excessive force and those that have utilized constitutionally permitted force.

Although the Plaintiffs have failed provide the court with any examples of cases in which an officer used excessive force in violation of the constitution, Smith has cited such cases to the court. The underlying theme of the cases cited by Smith is that the use of deadly force, or even less-than-deadly force, is excessive when the police have control of the situation and have a compliant or docile suspect already in custody. *See, e.g., Priester*, 208 F.3d at 927 (utilizing the "clearly-excessive-even-in-absence-of-case-law standard" to strip an officer of qualified immunity for allowing his dog to assault a compliant, non-threatening arrestee for two minutes while the arrestee was lying in the prone position); *Smith v. Mattox*, 127 F.3d 1416, 1418 (11th Cir. 1997) (utilizing the obvious clarity standard to deny qualified immunity to an officer who broke the arm of a once hostile suspect who "docilely submitted to arrest"); *McKinney ex rel. Mckinney v. Dekalb Cnty.*, 997 F.2d 1440, 1442-43 (11th Cir. 1993) (affirming the district court's denial of qualified immunity for an officer who shot an emotionally disturbed individual who was sitting on the ground three times when that individual began to shift his position). It is clear from the allegations of the Complaint that Humphrey was neither docile nor under the control of Smith at the time the force was applied, and therefore, these cases do not put Smith on notice that his conduct violated the Fourth Amendment.

Smith has also provided the court with a list of cases in which the officer was granted qualified immunity. Many of these cases directly address two of the Plaintiffs' chief concerns: that Humphrey was unarmed and that he was suffering from mental illness. *See, e.g.*, *Long v. Slaton*, 508 F.3d 576, 581-82 (11th Cir. 2007) (reversing the district court's denial of qualified immunity for a deputy who, although he shot and killed an unarmed individual, his decision to do so was reasonable given the individual's "unstable frame of mind, energetic evasion of the

deputy's physical control, . . . criminal act of stealing a police cruiser, and . . . starting to drive—even after being warned of deadly force—to a public road . . ."); *Andrade v. Miami Dade Cnty.*, No. 09–23220–CIV, 2011 WL 4345665 at *5 (S.D. Fla. September 16, 2011) (finding an officer's use of deadly force to be reasonable due to the risk that the agitated plaintiff who had "suffered a psychotic break, stripped off all of his clothing while outdoors and commenced ranting and engaging in other bizarre and alarming behavior" may obtain her weapon and begin using it on the public). The Eleventh Circuit has recognized that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Long*, 508 F.3d at 580 (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). As such, the court is "loath to second-guess the decisions made by police officers in the field." *Vaughan v. Cox*, 343 F.3d 1323, 1331 (11th Cir. 2003).

      Turning to the facts alleged in the Complaint, Smith was called to a scene in which an individual laboring under the effects of schizophrenia was being combative with paramedics. When he arrived on the scene, he was unable to obtain any information from the other officer who had responded to the scene before him. Moreover, the suspect had run off and was out of sight. Moments after arriving on the scene, the man presented himself and was waving his arms in the air as he deliberately approached Smith. While he was approaching Smith, Smith fired on the man. In other words, Smith was faced with a situation in which a person suffering a schizophrenic episode had already become combative with his paramedics to the point that police were requested, and when he had arrived at the scene, he was unable to obtain any information because Officer Franks was non-responsive. The suspect was wandering around

10

other residences where he could have posed a danger to the public by acting in the same combative way he did with the paramedics. Moreover, had Humphrey become combative with Smith and obtained Smith's weapon, the public, the paramedics, and Smith could have been in grave danger.

Given these facts, the Plaintiffs simply have not alleged facts sufficient to establish that Smith's conduct was "so far beyond the hazy border between excessive and acceptable force that [Smith] had to know he was violating the Constitution." *Hoyt v. Cooks*, 672 F.3d 972, 978 (11th Cir. 2012) (internal citations omitted). Simply stated, based on the allegations of the Complaint, Smith's conduct in response to Humphrey's combative actions were not such that "every reasonable officer in [Smith]'s position would inevitably conclude that the force was unlawful." *Id.* As such, Smith is due qualified immunity, and the Plaintiffs' claim is due to be DISMISSED. However, although it does not appear to the court that further factual pleading would change this, the Plaintiffs will be given an opportunity to do so, if they wish and if they can within the requirements of Rule 11, Fed. R. Civ. P.

2. Municipal Liability

Count II alleges that the City is liable for Humphrey's death because of its failure to adequately train, manage, and supervise Smith and also because of its failure to adequately investigate previous incidents of excessive force used by its officers when making arrests. (Doc. # 1 at ¶¶ 37, 38). However, in their Response Brief, the Plaintiffs abandoned their failure to adequately supervise and failure to investigate past incidents theories of liability. Also in the Response Brief, the Plaintiffs argue that the City "failed to train and manage its officers" instead

of arguing, as they alleged in the Complaint, that the City failed to "adequately" train its officers. (Doc. # 12 at 8).

In order for the Plaintiffs to hold the City liable pursuant to § 1983 for a Fourth Amendment excessive force claim, the Plaintiffs must be able to demonstrate "(1) that . . . constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). For the reasons discussed below, the court need not determine whether a constitutional deprivation actually occurred in this case because it is clear that the Plaintiffs' Complaint has not properly alleged the existence of a custom or policy that constituted deliberate indifference to a constitutional right.

The Supreme Court has explained that "[i]t is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (quoting *Springfield v. Kibbe*, 480 U.S. 257, 267(1987) (O'Connor, J., dissenting)). "[T]here are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." *Clanton*, 489 U.S. at 387; *see also Doe ex rel. Doe v. City of Demopolis*, 461 F. App'x 915 (11th Cir. 2012) (citing *Clanton* and explaining that "[a] city's failure to train a police officer can be properly thought of as the city's policy or custom in 'limited circumstances.'"). The Eleventh Circuit has found that "[m]unicipal policy or custom may include a failure to provide adequate training if the deficiency 'evidences a deliberate indifference to the rights of its inhabitants.'"

*Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009) (quoting *Clanton*, 489 U.S. at 388).

In order to establish deliberate indifference, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Lewis*, 561 F.3d at 1293 (quoting *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998)). "[D]eliberate indifference may be proven without evidence of prior incidents, if the likelihood for constitutional violation is so high that the need for training would be obvious." *Id*. For example, "the need to train officers in the constitutional limitations on the use of deadly force . . . can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights." *Clanton*, 489 U.S. at 390 n. 10. Therefore, as to the use of deadly force by police, deliberate indifference may be inferred even in the absence of allegations of prior incidents when a complete lack of training or management is alleged as the cause of the harm.

The Plaintiffs argue in their Response Brief that the City "failed to train and manage its officers regarding standard operating procedures for the use of deadly force with mentally ill subjects." (Doc. 12 at 8). However, that is not the theory put forth in the Complaint. The Complaint alleges a failure to "adequately" train and manage the officers. The Supreme Court has made it clear that federal courts are "ill suited to" engage in the "endless exercise of second-guessing municipal employee-training programs." *Id*. at 392. Essentially, the Plaintiffs allege, in a single conclusory statement from the Complaint, that the City trained and managed the officers but failed to do so adequately. Such an allegation is not enough to properly satisfy the Plaintiffs' Rule 8 burden as to their § 1983 claim against the City. It appears that the

13

Plaintiffs were attempting to bolster the language of the Complaint by means of their Response Brief, but the court is bound by the language of the Complaint alone.

Accordingly, this claim is DISMISSED without prejudice, and the Plaintiffs will be given time to file an amended complaint if they can do so within the confines of Rule 11.

## V.  CONCLUSION

For the foregoing reasons it is hereby ORDERED that

1. Defendant City of Headland Police Department is DISMISSED with prejudice as a party Defendant, as it is not a separate legal entity.

2.  Count I  is DISMISSED without prejudice as to the Fourth Amendment excessive force claim against Defendant Smith.

3.  Count II  is DISMISSED without prejudice as to the Fourth Amendment excessive force claim against the City.

4.  All other remaining claims are deemed abandoned, and hereby DISMISSED.

5.  The Plaintiffs are given until July 16, 2012 to file an amended complaint in this action, if they wish to do so and can do so being mindful of the requirements of Rule 11, Fed. R. Civ. P.  Any such amended complaint must be complete unto itself in conformity with the requirements of Local Rule 15.1.  If no such amended complaint is filed, this case will be dismissed with prejudice and final judgment entered at that time.

Done this 2nd day of July, 2012.

/s/ W. Harold Albritton  
W. HAROLD ALBRITTON  
SENIOR UNITED STATES DISTRICT JUDGE